Joel D. Voelzke (State Bar No. 179,296)
Joel@Voelzke.com
Intellectual Property Law Offices of Joel Voelzke, A P.C.
24772 W. Saddle Peak Road
Malibu, CA 90265
Tel: (310) 317-4466
Fax: (310) 317-4499

Attorneys for Plaintiff Partners for Health and Home, L.P.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PARTNERS FOR HEALTH AND HOME, L.P., a California Limited Partnership<br><br>Plaintiff,<br>v.<br><br>SEUNG WEE YANG individually and doing business as PEARL LIFE COOKWARE, INC.,<br><br>S T P AMERICA, INC., a California corporation, and<br><br>DOES 1-10, inclusive<br><br>Defendants. | Case No.: CV09-07849-CBM (RZx)<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION PROHIBITING DEFENDANTS SEUNG WEE YANG AND S T P AMERICA, INC. FROM USING PLAINTIFF'S PERMA-LIFE® TRADEMARK**<br><br>**[Supporting Declaration of Joel Voelzke, and [Proposed] Preliminary Injunction submitted concurrently herewith]**<br><br>Date: July 12, 2010<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Judge: Hon. Consuelo Marshall |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTE that on July 12, 2010 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 2 of the United States District Court, Central District of California, 312 N. Spring Street, Los Angeles, California 90012, the Honorable Consuelo B.

1  Marshall presiding, Plaintiff Partners for Health and Home, L.P. ("Plaintiff") will, and hereby
2  does, move the Court for a preliminary injunction against defendants Seung Wee Yang and S T P
3  America, Inc., and all of S T P America, Inc.'s officers, directors, and employees, including
4  specifically Seung Wee Yang ("collectively Defendants") that Defendants be ordered to inventory
5  and preserve all uses they have made of Plaintiff's PERMA-LIFE® trademark in their advertising,
6  and to serve that inventory and those copies on Plaintiff, and that Defendants be enjoined from
7  using Plaintiff's PERMA-LIFE® trademark in Defendants' Internet advertising and promotion.

8      This Motion is based on this Notice of Motion, the attached Memorandum of Points and
9  Authorities, the Declaration of Joel Voelzke filed concurrently herewith, the files, records and
10  pleadings in this action, and such other or additional argument or evidence as may be made at or
11  before the hearing on this Motion.

        INTELLECTUAL PROPERTY LAW OFFICES OF
        JOEL VOELZKE, A P.C.

DATED:  June 10, 2010

        /Joel D. Voelzke/
        Joel D. Voelzke
        Attorneys for Plaintiff Partners for Health and Home, L.P.

ii

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................. iii

**TABLE OF AUTHORITIES** ............................................................................................ iv

**I.     INTRODUCTION** ..................................................................................................1

**II.    PLAINTIFF IS ENTITLED TO EXCLUSIVE USE OF THE PERMA-LIFE® TRADEMARK**..................................................................................................2

**III.   PRELIMINARY INJUNCTION STANDARD** ....................................................3

**IV.    TRADEMARK INFRINGEMENT STANDARD** ................................................4

**V.     DEFENDANTS' UNAUTHORIZED USES OF PLAINTIFF'S TRADEMARK** .........6

    A.   DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS A DOMAIN NAME FROM WHICH TO SELL THEIR COOMPETING PEARL LIFE COOKWARE..................................................................................................7

    B.   DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS WEB SITE METATAGS.............................................................................................8

    C.   DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS VISIBLE TAGS ................................................................................................9

    D.   DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK WITHIN A PROMINENT PHOTOGRAPH ASSOCIATING DEFENDANTS WITH "PERMA-LIFE" ..............................................................................................10

    E.   DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK WITHIN TEXT ON ITS WEBSITE ..................................................................................10

    C.   DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS AN INTERNET SEARCH ENGINE KEYWORD ADVERTISING TERM .................10

**CONCLUSIONS** ...............................................................................................................11

INTELLECTUAL PROPERTY LAW OFFICES OF JOEL VOELZKE, A P.C.
24772 W. SADDLE PEAK ROAD
MALIBU, CALIFORNIA 90265-3042
(310) 317-4466

# TABLE OF AUTHORITIES

**Federal Statutes**

15 U.S.C. §1114(a) ................................................................................................. 4

15 U.S.C. § 1115(a) ................................................................................................ 2

15 U.S.C. § 1117 .................................................................................................... 9

15 U.S.C. § 1125(a) ............................................................................................... 4

**Federal Cases – Courts of Appeal**

*Abercrombie & Fetch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 82 U.S.P.Q.2d 1845 (9th Cir. 2007) ............................................................................................... 4

*Australian Gold Inc. v. Hatfield*, 436 F.2d 1228, 77 U.S.P.Q.2d 1968 (10th Cir. 2006) ................................................................................................... 10, 11

*Boston Prof'l Hockey Ass'n., Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 185 U.A.P.Q. 364 (5th Cir. 1975) .............................................. 8

*Brookfield Communications Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 50 U.S.P.Q.2d 1545 (9th Cir. 1999) ..................................... 7, 8

*Department of Parks and Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 78 U.S.P.Q.2d 1887 (9th Cir. 2006) ........................................................................ 4

*Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 84 U.S.P.Q.2d 1530 (9th Cir. 2007) ........... 3

*Horphag Research Ltd.* V. Pellegrini, 337 F.3d 1036, 67 U.S.P.Q.2d 1532 (9th Cir. 2003) ............................................................................................ 9

*Panavision Int'l v. Toeppen*, 141 F.3d 1316, 16 U.S.P.Q.2d 1511 (9th Cir. 1998) .............. 8

*Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 84 U.S.P.Q.2d 1865 (9th Cir. 2007) ..... 5

*Southwest Voter Registration Ed. Proj. v. Shelley*, 344 F.3d 914 (9th Cir. 2003) ................ 4

*Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 88 U.S.P.Q.2d 1051 (1st Cir. 2008) .......................................................................................... 9

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989) ..................................... 4

**Federal Cases – District Court**

*Storus Corp. v. Aroa Mktg. Inc.*, 87 U.S.P.Q.2d 1032 (N.D. Cal. 2008) ........................... 11

*Verizon California Inc. v. Navigation Catalyst Sys. Inc.*, 568 F. Supp.2d 1088, 88 U.S.P.Q.2d 1771 (C.D. Cal. 2008) .............................................................. 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is an action for trademark infringement and cyberpiracy. Plaintiff alleges that Defendants have infringed Plaintiff's federally registered PERMA-LIFE® trademark for stainless steel cookware both (1) by using the confusingly similar Pearl Life brand name for their competing stainless steel cookware, but more importantly for purposes of this Motion, by (2) repeatedly using Plaintiff's PERMA-LIFE® trademark exactly in domain names, as internet website metatags, as video tags, in visible text on Defendant's websites, in a photograph posted on the Internet, and as Internet search engine advertising keywords, in order to ride on Plaintiff's coattails and divert consumers to Defendants' various websites at which Defendants promote their competing Pearl Life cookware.

This motion for preliminary injunction concerns only Defendants' use of Plaintiff's PERMA-LIFE® trademark to sell Defendants' competing Pearl Life cookware. Defendants do not sell PERMA-LIFE® cookware. However, undeterred by any legitimate connection to Plaintiff or Plaintiff's PERMA-LIFE® cookware, Defendants nevertheless use Plaintiff's registered PERMA-LIFE® trademark as a marketing tool to attract business. Such use constitutes blatant trademark infringement. Plaintiff is entitled to an order that Defendants stop their uses of Plaintiff's trademark.

Plaintiff was sincerely hoping that merely by filing this lawsuit, Defendants would be prompted to at least stop their infringing, indefensible, and ubiquitous uses of Plaintiff's trademark. Plaintiffs were also hoping that Defendants would produce in response to Plaintiff's discovery requests, a listing of all of the ways that they have used Plaintiff's PERMA-LIFE® trademark within their Internet advertising. Defendants, however, have refused to produce such an inventory of printouts showing their uses of Plaintiff's trademark, inexplicably claiming that they cannot recall ever having used Plaintiff's mark in their advertising.

Nevertheless, Defendants continue their bold, unabashed, and infringing uses of Plaintiff's

Intellectual Property Law Offices of Joel Voelzke, A P.C.
24772 W. Saddle Peak Road
Malibu, California 90265-3042
(310) 317-4466

trademark, thus rendering it necessary for Plaintiff to bring this motion for preliminary relief.

## II. PLAINTIFF IS ENTITLED TO EXCLUSIVE USE OF THE PERMA-LIFE® TRADEMARK FOR COOKWARE

The Trademark Act provides that owning a federal trademark registration "shall be prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration . . . but shall not preclude another person from proving any legal or equitable defense or defect . . ." 15 U.S.C. § 1115(a).

In this case, Plaintiff owns a federal trademark registration for the PERMA-LIFE® trademark. In 2002, Plaintiff's principal, Ki Won Shim, bought out her business partner at the time, Domenico Santorelli, thus purchasing the rights to the PERMA-LIFE® trademark and to U.S. Trademark Registration No. 2,029,777 ("the '777 Registration") for the goods of, *inter alia*, metal cookware.[1] That assignment to Ki Won Shim was recorded in the U.S. Patent and Trademark Office (PTO) on July 22, 2002, at Reel 2550, Frame 0650. Since then, Ms. Shim and the company of which she is a principal, Partners for Health & Home, L.P., have continuously sold high quality stainless steel cookware under the PERMA-LIFE® trademark. A true copy of that trademark registration is attached as **Exhibit 1** to the supporting Voelzke Declaration filed concurrently herewith.

When Ms. Shim learned that that registration had expired through inadvertence of prior trademark counsel, Ms. Shim renewed her federal trademark rights by applying for and obtaining a new trademark registration, Registration No. 3,564,113 ("the '113 Registration") for the mark PERMA-LIFE® for the same goods. A true copy of that trademark registration is attached as **Exhibit 3** to the supporting Voelzke Declaration filed concurrently herewith.

In 2009, Ms. Shim assigned both of the registrations, including the right to sue for past

---

[1] The registration is for the goods of "nonelectric cookware, namely, pots, metal and glass pans, frying pans, skillets, steamers, strainers, casserole dishes, tea kettles, pasta pans, omelette pans, roasting pans, and woks."

infringements, to Plaintiff Partners. Ms. Shim continues to this day as Plaintiff's principal. The assignment of the '777 and '113 Registrations to Partners, which both include the right to sue for past infringement, were both recorded in the PTO at Reel 4087, Frame 0496. Printouts from the PTO's website showing Partners to be the current registered owner of both of those registrations are attached as **Exhibits 2** and **4,** respectively**,** to the Voelzke Declaration, respectively.

Because Plaintiff owns a subsisting federal trademark registration for the mark PERMA-LIFE® for the goods of "nonelectric cookware, namely, pots, metal and glass pans, frying pans, skillets, steamers, strainers, casserole dishes, tea kettles, pasta pans, omelette pans, roasting pans, and woks," Plaintiff has the prima facie exclusive right to use the PERMA-LIFE® mark in commerce on or in connection with all of the goods listed in the registration. Plaintiff is thus entitled to a rebuttable presumption that it has the right to exclude all others, including defendants Seung Wee Yang and STP, from using the name PERMA-LIFE in commerce on or in connection with pots, pans, steamers, woks, and other cookware.

### III.   PRELIMINARY INJUNCTION STANDARD

The district court in this district succinctly summed up the standard for issuing a preliminary injunction as follows:

> The Ninth Circuit has articulated two tests for analyzing requests for preliminary injunctions. Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 [84 U.S.P.Q.2d 1530] (9th Cir. 2007). "Under the 'traditional' criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Id. (internal quotations omitted). Under the "alternative" test, the plaintiff must show "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." Id. (internal quotations

omitted). At a minimum, though, the plaintiff must raise at least "serious questions" about the likelihood of success on the merits, or no injunction will issue. Id. Further, when implicated, the public interest must also be considered. Department of Parks & Rec. v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 [78 U.S.P.Q.2d 1887] (9th Cir. 2006).

The "alternative" test is a sliding scale, or continuum. Bazaar Del Mundo, 448 F.3d at 1123; Southwest Voter Registration Ed. Proj. v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003). Thus the greater the probability of success, the less sharply the balance of hardships must tip toward the plaintiff. Bazaar Del Mundo, 448 F.3d at 1123. Conversely, "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tips in their favor." Southwest Voter Registration, 344 F.3d at 918.

The normal calculus is altered somewhat in a trademark infringement case, in that "[i]rreparable injury is ordinarily presumed upon a showing of a likelihood of success." Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 [82 U.S.P.Q.2d 1845] (9th Cir. 2007).

Verizon California Inc. v. Navigation Catalyst Sys. Inc., 568 F. Supp. 2d 1088, 88 U.S.P.Q.2d 1771, 1774-1775 (C.D. Cal. 2008). See also Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n. 3 (9th Cir. 1989) (irreparable injury is presumed in trademark infringement actions once likelihood of confusion is established).

## IV. TRADEMARK INFRINGEMENT STANDARD

It is an infringement of a trademark to use in commerce any sufficiently similar word or device such that consumers are likely to be deceived regarding the source, affiliation, or sponsorship of the goods being offered for sale. See 15 U.S.C. § 1114(1) (infringement of a registered trademark) and 15 U.S.C. § 1125(a) (Lanham Act § 43(a), false designation and false descriptions, regardless of whether a registered mark is involved).

4
*Partners for Health and Home, L.P. v. Seung Wee Yang*
**MOTION FOR PRELIMINARY INJUNCTION**

> The core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products. An eight-factor test — the so-called Sleekcraft factors — guides the assessment of whether a likelihood of confusion exists. The Sleekcraft factors are:
>
>> (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets.
>
> The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them.

Perfumebay.com Inc. v. eBay Inc., 506 F.3d 1165, 84 U.S.P.Q.2d 1865, 1871 (9th Cir. 2007) (citations and internal quotations omitted).

> In the internet context, the three most important Sleekcraft factors in evaluating a likelihood of confusion are (1) the similarity of the marks, (2) the relatedness of the goods and services, and (3) the parties' simultaneous use of the Web as a marketing channel. When this controlling troika or internet trinity suggests confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement. If the internet trinity does not clearly indicate a likelihood of consumer confusion, a district court can conclude the infringement analysis only by balancing all the Sleekcraft factors within the unique context of each case. Id.

Id. (citations and internal quotations omitted).

In this case, both the "internet trinity" as well as the full list of Sleekcraft factors overwhelmingly favor Plaintiff. With respect to the first factor of the "internet trinity" factors, the similarity of the marks, the Defendants are using Plaintiff's PERMA-LIFE trademark exactly, as well as the near-exact imitations of "perma life," "permalife," and "pperma_life." Those uses will be detailed below. The marks are therefore exactly the same.

1    With respect to the second factor, the relatedness of the goods and services, the goods
2 are exactly the same – stainless steel pots and pans.

3    With respect to the third factor, the parties' simultaneous use of the Web as a marketing
4 channel, both Plaintiff and Defendants do in fact use the Web as a marketing channel.
5 Defendants used www.pearllife.com to sell its products until recently, and now use
6 www.316plc.com as a marketing website.  Plaintiff uses http://www.partnersus.com as a
7 marketing website.

8    Both parties post videos demonstrating their products.  For example, Plaintiff uses
9 Youtube as a marketing channel, posting videos demonstrating its PERMA-LIFE® cookware.
10 See, e.g., **Exhibit 5** to the Voelzke Decl.  Defendants also uses Youtube as a marketing
11 channel, posting videos promoting their Pearl Life cookware.  See, e.g., **Exhibit 6** to the
12 Voelzke Decl., showing a video posted by user "comyang" (Defendant Yang) and including the
13 phrase "perma life" as a tag that supposedly represents the content of that video.

14    Other examples of Defendants' use of the Internet as a marketing channel, and uses of
15 Plaintiff's PERMA-LIFE® trademark on the Internet within Defendants' advertising without
16 Plaintiff's permission, are shown in **Exhibits 12-19** to the Voelzke Declaration, and are
17 discussed more fully below.

18

19 **V.    DEFENDANTS' UNAUTHORIZED USES OF PLAINTIFF'S TRADEMARK**

20    Defendants have repeatedly used without permission or legitimate reason, and continue
21 to use to this day without permission or legitimate reason, Plaintiff's PERMA-LIFE®
22 trademark and colorable imitations of that trademark in numerous places on the Internet.

23    Curiously, Defendant's principal Seung Wee Yang claims under penalty of perjury that
24 he cannot recall ever having used the term "PERMA-LIFE" within Defendants' Internet
25 advertising, and on that basis, refused to produce in discovery any documents other than a
26 single web page which constitute such advertising.  See Defendant STP's Response to
27 Interrogatory 9  in **Exhibit 10** to Voelzke Decl. ("Responding party does not recall using such
28

terms in its advertising") and its corresponding Interrogatory No. 9 in **Exhibit 9** to the Voelzke Decl.[2]  Perhaps the following examples of Defendants using Plaintiff's trademark in their Internet advertising will refresh Mr. Yang's memory.

### A. DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS A DOMAIN NAME FROM WHICH TO SELL THEIR COMPETING PEARL LIFE COOKWARE

Defendants admit in their discovery responses that they registered the domain names www.perma-life.co.kr and www.permalife.co.kr, which incorporate Plaintiff's trademark exactly, and that when they did so, they were aware of Plaintiff's PERMA-LIFE® trademark. (Answer to Requests for Admission Nos. 7-9, and 19-21 attached as **Exhibit 11** to the Voelzke Decl.)), and that they did so without Plaintiff's permission (Answer to Requests for Admission No. 27, attached as **Exhibit 11** to the Voelzke Decl.).  Defendants used the www.perma-life.co.kr as a website from which to sell their competing Pearl Life cookware (See Voelzke Decl. **Exhibit 12**).  Defendants therefore literally sold their competing Pearl Life cookware under Plaintiff's PERMA-LIFE trademark, as can be seen in **Exhibit 12**.

After registering the other domain, www.permalife.co.kr, Defendants tried to sell that domain.  (Answer to Request for Admission No. 26, attached as **Exhibit 11** to the Voelzke Decl.; see also **Exhibit 14**).

Registering a domain name that corresponds to a trademark of another with a bad faith intent to profit from that domain name constitutes not only cyberpiracy under 15 U.S.C. §1125(d), but even before that cyberpiracy statute was written, was held to constitute commercial use of the other party's trademark that was likely to confuse consumers.  E.g., Brookfield Communications Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 50

---

[2] The actual Requests for Production and Interrogatories are attached as **Exhibits 7** and **9**, respectively, to the Voelzke Declaration.  In its discovery responses, Defendant STP did not quote the Requests for Production and the Interrogatories as required by the Local Rules.  Defendant STP has, by its ignoring of Plaintiff's request that it do so, refused to provide responses in which Defendant quotes the Requests and the Interrogatories together with its responses.

U.S.P.Q.2d 1545, 1559 (9th Cir. 1999) ("Given the virtual identity of "moviebuff.com" and [plaintiff's trademark] 'MovieBuff,' the relatedness of the products and services accompanied by those marks, and the companies' simultaneous use of the Web as a marketing and advertising tool, many forms of consumer confusion are likely to result.")

In <u>Panavision International, L.P. v. Toeppen</u>, 141 F.3d 1316, 1325, 16 U.S.P.Q.2d 1511 (9th Cir. 1998), the Ninth Circuit held that even a defendant's attempt to sell the domain name, without anything more, will constitute a violation of the rights of the trademark owner. (Defendant's "commercial use [of the plaintiff's trademark] was his attempt to sell the trademarks themselves." See also <u>Boston Prof'l Hockey Ass'n., Inc. v. Dallas Cap & Emblem Mfg., Inc.</u>, 510 F.2d 1004, 1010, 185 U.S.P.Q. 364 (5th Cir. 1975) (holding that trademark law protects the trademark itself, despite the fact that only "a reproduction of the trademark itself is being sold, unattached to any other goods or services").

Defendants' registration and uses of Plaintiff's PERMA-LIFE trademark as part of domain names, which they then used to attempt to sell their competing Pearl Life cookware or to attempt to sell the domain itself, constitute clear violations of Plaintiff's trademark rights.

B.  <u>DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS WEB SITE METATAGS</u>

Defendants also used Plaintiff's PERMA-LIFE® trademark and colorable imitations thereof as metatags on their websites in order to attract consumer attention to those websites. **Exhibit 13** and **Exhibit 15** to the Voelzke Declaration are printouts showing the HTML source code for Defendants' www.perma-life.co.kr and www.permalife.co.kr domains, respectively.

Using another party's trademark as website metatags without legal justification constitutes trademark infringement. <u>Brookfield Communications Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 50 U.S.P.Q.2d 1545, 1565-66 (9th Cir. 1999) ("Using another's trademark in one's metatags is much like posting a sign with another's trademark in front of one's store.") ("[W]e conclude that the Lanham Act bars [the defendant] from including

8
*Partners for Health and Home, L.P. v. Seung Wee Yang*
**MOTION FOR PRELIMINARY INJUNCTION**

in its metatags any term confusingly similar with [the plaintiff's] mark.") (reversing denial of preliminary injunction).  See also <u>Horphag Research Ltd. v. Pellegrini</u>, 337 F.3d 1036, 67 U.S.P.Q.2d 1532 (9th Cir. 2003) (district court properly granted plaintiff's motion for attorneys' fees on trademark infringement claim, since 15 U.S.C. §1117(a) allows award of reasonable attorneys' fees to prevailing party when infringement is malicious, fraudulent, deliberate, or willful, and since record fully supported district court's finding that defendant's infringing use of plaintiff's registered trademark "Pycnogenol" as metatag in defendant's World Wide Web sites was willful and deliberate); <u>Venture Tape Corp. v. McGills Glass Warehouse</u>, 540 F.3d 56, 88 U.S.P.Q.2d 1051 (1st Cir. 2008) (affirming summary judgment of trademark infringement based on use of competitor's trademark as metatags and invisible text on defendant's website; under such facts, evidence of actual confusion is unnecessary to grant of summary judgment).

C. <u>DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS VISIBLE TAGS</u>

Defendants have also used Plaintiff's PERMA-LIFE® trademark as visible tags applied to videos that Defendants posted on the Internet promoting their Pearl Life cookware. **Exhibit 6** to the Voelzke Declaration is a screen shot of one such Internet page, showing that Defendant Yang (Youtube username "comyang") applied the tag "perma life" to a video that he posted promoting his own Pearl Life cookware.  Thus, when an internet visitor goes to Youtube.com and types in "perma-life" as a video search term, some of the videos posted by Defendants promoting their Pearl Life cookware will be returned to the user in the "hit list." **Exhibit 16** to the Voelzke Declaration is a printout showing that when a user typed in "perma-life" as a search term on Youtube seeking videos that show Plaintiff's cookware, several of the Defendants' videos posted by "comyang" promoting Defendants' Pearl Life cookware appeared in the search results alongside Plaintiff's video featuring genuine PERMA-LIFE® cookware (the video by "ilovepartners").   Using another party's trademark on an Internet

9
*Partners for Health and Home, L.P. v. Seung Wee Yang*
**MOTION FOR PRELIMINARY INJUNCTION**

Intellectual Property Law Offices of Joel Voelzke, A P.C.
24772 W. Saddle Peak Road
Malibu, California 90265-3042
(310) 317-4466

website without authorization, and without legal justification, constitutes trademark infringement.  E.g., <u>Australian Gold Inc. v. Hatfield</u>, 436 F.2d 1228, 77 U.S.P.Q.2d 1968, 1972 (10th Cir. 2006) (upholding the district court's permanently enjoining the defendants "from . . . displaying Plaintiff's trademarks on the internet, or using Plaintiff's trademarks in the metatags or html code for websites.").

### D. DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK WITHIN A PROMINENT PHOTOGRAPH ASSOCIATING DEFENDANTS WITH "PERMA-LIFE"

**Exhibit 17** to the Voelzke Declaration shows a photograph that is currently posted on an Internet page apparently controlled by the Defendants, showing what is believed to be Defendant Yang under a large "PERMA-LIFE" banner.  The photograph gives the impression that Defendant Yang is connected to PERMA-LIFE and sells PERMA-LIFE® cookware.  In truth, however, Defendant Yang sells his own Pearl Life brand of cookware, not Plaintiff's PERMA-LIFE® cookware.

### E. DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK WITHIN TEXT ON ITS WEBSITE

Defendants also use the term "perma-life," including cognates thereof such as "pperma_life," as visible text on their newest website, www.316plc.com , from which they continue to promote their Pearl Life cookware.  **Exhibit 18** to the Voelzke Declaration contains examples of Defendants using Plaintiff's trademark as visible text on Defendants' web pages.

### F. DEFENDANTS' USE OF PLAINTIFF'S PERMA-LIFE® TRADEMARK AS AN INTERNET SEARCH ENGINE KEYWORD ADVERTISING TERM

**Exhibit 19** to the Voelzke Declaration is a printout showing that the Defendants purchased Plaintiff's "PERMA-LIFE" trademark as an advertising keyword on Google.com,

such that when users type in "perma-life" on Google, the Defendants' website www.pearllife.com came up in the list of "sponsored links" at the top of the search hit list. Defendants admit to having purchased the terms "perma-life" and "perma life" as Internet search engine advertising keywords. (See Responses to Requests for Admission Nos. 50 and 51, **Exhibit 11** to the Voelzke Decl.)  Using another party's trademarks as Internet advertising keywords is likely to lead to "initial interest confusion" at the very least, and is therefore, absent other factors that would change the analysis, trademark infringement.  E.g., Australian Gold Inc. v. Hatfield, 436 F.2d 1228, 77 U.S.P.Q.2d 1968, 1972, 1976 (10th Cir. 2006) (Using a competitor's trademark as an Internet search engine advertising keyword constitutes "us[ing] the goodwill associated with Plaintiff's trademarks in such a way that consumers might be lured to the [products sold by] Plaintiff's competitors.  This is a violation of the Lanham Act."); Storus Corp. v. Aroa Mktg. Inc., 87 U.S.P.Q.2d 1032 (N.D. Cal. 2008) (granting summary judgment of trademark infringement; defendant's use of plaintiff's trademark as a Google advertising keyword was likely to cause at least initial interest confusion, which is one form of trademark infringement).

## CONCLUSIONS

Defendants' infringement of, and free riding on, Plaintiff's PERMA-LIFE® trademark and the goodwill associated with that trademark has continued almost without pause since the filing of this lawsuit.  Defendants use and infringe Plaintiff's PERMA-LIFE® trademark in numerous ways, including a number of ways which the courts have held constitute trademark infringement.  Plaintiff continues to suffer irreparable and incalculable harm due to Defendants' continued unauthorized, ubiquitous, and inexcusable uses of Plaintiff's trademark. Plaintiff prays that it be granted a preliminary injunction prohibiting defendant Seung Wee Yang, and defendant STP and its officers, directors, employees, and agents, including specifically Seung Wee Yang, from further such uses of Plaintiff's trademark.

Additionally, because only the Defendants know all of the places and all of the ways in which they are using and/or have used Plaintiff's trademark, and they have effectively refused to produce that information in discovery, Defendants should be ordered to immediately catalog all of the uses they have made of Plaintiff's trademark, including the identifying URL's of the Internet pages of such uses, and preserve those uses of Plaintiff's trademark, both in paper and electronic form, and produce that information to Plaintiffs for use at trial, as detailed in the [Proposed] Preliminary Injunction filed concurrently herewith.

An injunction enjoining Defendant from using Plaintiff's trademark will, apparently, be the only thing that will get these Defendants' attention.

Respectfully submitted,

INTELLECTUAL PROPERTY LAW OFFICES OF JOEL VOELZKE, A P.C.

DATED:  June 10, 2010

    /Joel D. Voelzke
Joel D. Voelzke
Attorneys for Plaintiff Partners for Health and Home, L.P.

## PROOF OF SERVICE

I, the undersigned, am at least 18 years old and am not a party to this action. My business address is 24772 Saddle Peak Road, Malibu, California. I hereby certify that on this day of June 10, 2010 I served the following document:

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION PROHIBITING DEFENDANTS SEUNG WEE YANG AND S T P AMERICA, INC. FROM USING PLAINTIFF'S PERMA-LIFE® TRADEMARK**

**[PROPOSED] PRELIMINARY INJUNCTION**

**DECLARATION OF JOEL VOELZKE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

on the interested party(ies) in the above action via personal service at the following address:

Gabriel Colorado, Esq.
Law Offices of Steven C. Kim & Associates
3701 Wilshire Blvd.
Suite 1040
Los Angeles, CA 90010

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

_____
Hayley Lerch