Intellectual Property Law Offices of Joel Voelzke, A P.C.
24772 W. Saddle Peak Road
Malibu, California 90265-3042
(310) 317-4466

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PARTNERS FOR HEALTH AND HOME, L.P., a California Limited Partnership<br><br>Plaintiff,<br>v.<br><br>SEUNG WEE YANG individually and doing business as PEARL LIFE COOKWARE, Inc. and PLC USA, Inc.;<br><br>SOO JUNG KIM individually and doing business as PLC USA, Inc.<br><br>S T P America, Inc., a California corporation;<br><br>Dong Yang Science, Inc., a California corporation; and<br><br>DOES 1-10, inclusive<br><br>Defendants. | Case No.: CV09-07849 RZ<br>  consolidated with<br>Case No.: CV10-04073 RZ<br><br>**[PROPOSED]** **FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PLAINTIFF'S MOTION FOR FURTHER PRELIMINARY INJUNCTION**<br><br>Date: n/a<br>Time: n/a<br>Courtroom: 540<br>Judge: Hon. Ralph Zarefksy |

## I. FINDINGS OF FACT

### A. UNDISPUTED FACTS AS PREVIOUSLY DETERMINED BY THE COURT

The Court reiterates here the facts as set forth in its previous Undisputed Facts and Conclusions of Law [113] dated October 28, 2011.

1. In the 1980's in New York, Domenico Santorelli, who is not a party to these proceedings, began selling stainless steel cookware under the brand name Perma-Life®.

2. In 1986, Ki Won ("Jean") Shim entered into a 50-50 business partnership with Mr.

1
*Partners for Health and Home, L.P. v. Seung Wee Yang*
**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Santorelli whereby they would jointly own and operate the Perma-Life cookware business, including specifically the Perma-Life trademark.

3. In 2002, Ms. Shim purchased from Domenico Santorelli the rights to the Perma-Life trademark and to U.S. Trademark Registration No. 2,029,777 ("the '777 Registration") for the goods of, *inter alia*, metal cookware, and the goodwill associated with that mark.

4. Since purchasing the rights to the Perma-Life trademark and associated goodwill of the business from Mr. Santorelli, together Ms. Shim and Plaintiff Partners for Health & Home, L.P. ("Partners"), of which Ms. Shim is the President, have continuously sold stainless steel cookware under the Perma-Life trademark.

5. In 2008, Plaintiff's prior trademark counsel, Paul Supnick, transferred his files for Jean Shim, including the trademark files, to Plaintiff's current counsel, Joel Voelzke.

6. In reviewing those incoming files, Mr. Voelzke noticed that Mr. Supnick had failed to renew the '777 registration and that the time period for filing a late renewal had expired. Mr. Voelzke filed a new trademark application to re-register the Perma-Life trademark.

7. The time period from the time that the PTO officially declared the '777 registration lapsed on June 6, 2008, until the day that attorney Voelzke filed the new application on June 7, 2008, was one day.

8. The application filed by attorney Voelzke registered as Registration No. 3,564,113 ("the '113 Registration") on January 20, 2009 for the mark Perma-Life.

9. The '113 Registration is a valid and subsisting federal trademark registration for the mark Perma-Life.

10. The period during which there was no federal trademark registration for Perma-Life owned in whole or in part by Plaintiff, its principal Jean Shim, or a predecessor company in which Jean Shim was part owner, was less than 8 months (from June 6, 2008 until January 20, 2009).

11. In 2009, Ms. Shim assigned both of the registrations, including the goodwill associated with the mark and the right to sue for past infringements, to Plaintiff Partners for Health and Home, L.P. ("Partners"), of which she is the President.

12. At no time from 1986 until the present did Ms. Shim or her companies ever stop selling Perma-Life cookware, whether through her partnership with Domenico Santorelli, through her company Perma-Life Cookware, or through her company Partners.

13. Defendant S T P America, Inc. ("STP") is 100% owned by Defendant Seung Wee ("Edward") Yang.

14. Defendant Seung Wee Yang made all of the managerial decisions for STP.

15. Defendant Seung Wee Yang made all of STP's marketing and advertising decisions.

16. For several years, Defendant Yang imported "health mattresses" and water purifiers from Korea.

17. From about October 2005 to about April 2007, Plaintiff purchased mattresses and water purifiers from Mr. Yang, and used its distribution network to sell those products to end customers in America.

18. In January 2008, Mr. Yang began selling stainless steel cookware; he called his new cookware Pearl Life.

19. Defendants sold approximately $400,000 worth of Pearl Life cookware.

20. Defendants' purchase price for that cookware from the manufacturer was approximately $223,708.

21. Occasionally, Defendants advertised their cookware as being "PEARL-LIFE" (with a hyphen).

22. A significant target market for both Plaintiff's cookware and Defendants' cookware is the Korean American community in the Los Angeles area.

23. In their discovery answers, Defendants claimed to be unable to remember any way in which they had ever used Plaintiff's Perma-Life trademark within their own advertising to sell their competing Pearl Life cookware.

24. In 2006, Mr. Yang registered the domain name www.permalife.co.kr.

25. Mr. Yang placed, or caused to be placed, the metatag "permalife" on the website located at www.permalife.co.kr.

26. Mr. Yang placed the www.permalife.co.kr domain for sale by stating on that website that the domain was "For Sale."

27. On July 9, 2008, Mr. Yang registered a second Korean domain, www.perma-life.co.kr.

28. Mr. Yang admitted in deposition that in early 2007 his relationship with Ms. Shim fell apart; then more than a year later, he registered the domain www.permalife. co.kr and linked it to his www.pearllife.com website (framed that website) from which he advertised his Pearl Life cookware; then later he put the www.perma-life.co.kr domain up for sale, all without ever telling Ms. Shim that he had done those things.

29. Mr. Yang repeatedly denied in this litigation that Exhibit 4 to the Complaint, which showed the domain www.perma-life.co.kr being used to promote Mr. Yang's own Pearl Life cookware, was an accurate representation of what the website at www.perma-life.co.kr looked like.

30. Mr. Yang admitted in deposition however, that Exhibit 3 to the deposition (which is identical to Exhibit 4 to the Complaint) was an accurate representation of what www.perma-life.co.kr looked like.

31. Mr. Yang admitted in deposition that he had caused the domain www.perma-life.co.kr to be "linked" or "forwarded" to his "home page" at www.pearllife.com.

32. Contrary to his deposition testimony, Mr. Yang did not actually stop linking (framing) www.perma-life.co.kr to his own Pearl Life website until at least October 2009.

33. Mr. Yang repeatedly denied in this litigation that he had caused the metatags "perma-life" and "perma life" to be placed on the website at www.permalife. co.kr.

34. That source code for the website www.perma-life.co.kr contained the terms "perma life" and "permalife" as metatags.

35. Mr. Yang instructed his website designer, Steven Kim, to place "permalife" as a metatag on that website.

36. Mr. Yang posted videos on the Internet promoting his Pearl Life cookware to which he applied Plaintiff's Perma-Life trademark as visible tags (indexing tags); he posted such videos on

the video sharing sites YouTube (www.youtube.com), and Tag Story (www.tagstory.com), and on his "blog" at Daum (www.daum.net).

37. Mr. Yang's intent in applying Plaintiff's Perma-Life trademark as indexing tags for videos was to divert consumers who were looking for Plaintiff's Perma- Life cookware on the Internet to his www.pearllife.com website from which he sold his Pearl Life cookware.

38. In their Answers, Defendants denied having purchased "PERMA-LIFE" as a search engine advertising keyword.

39. Mr. Yang, however, did in fact purchase from Google, Inc. the term "permalife" as an Internet search engine advertising keyword.

40. In sum, Defendants used Plaintiff's Perma-Life trademark in the following ways: (1) as a domain name through which they framed their www.pearllife.com website at which they promoted their competing Pearl Life cookware; (2) as metatags on their websites at which they promoted their Pearl Life cookware; (3) as Google Internet search engine advertising keywords to direct consumers to their www.pearllife.com website; and (4) as visible video tags which act as indexes on their videos which they posted at various Internet video sharing websites including at least YouTube (www.youtube.com) and Tag Story (www.tagstory.com), and at a "blog" site at Daum (www.daum.net).

41. Defendants posted on their www.pearllife.com website a large photograph of Defendant Yang shaking hands with the original founder of Perma-Life cookware, Domenico Santorelli, and text below the photograph stating that Defendants entered into an "agreement" with Mr. Santorelli, falsely implying a connection between Defendants and Plaintiff's Perma-Life cookware.

42. Defendants never sold any Perma-Life cookware.

43. The text accompanying the photograph states that the company [i.e., the company formerly selling Perma-Life] has changed names to "New Life" and is now being operated by Mr. Santorelli's daughters.

44. Ms. Shim sold Perma-Life cookware continuously from 1986 to the present.

45. A significant number of consumers have actually been confused between Pearl Life and Perma-Life, and/or between Plaintiff and Defendants.

46. Defendants did not seek advice of counsel before using Plaintiff's Perma-Life trademark to promote their own Pearl Life cookware, nor did they seek advice of counsel on that issue even after this action was initiated against them.

47. Defendants did not respond to numerous cease-and-desist demands from Plaintiff that Defendants stop using Plaintiff's Perma-Life trademark in their advertising.

B.   ADDITIONAL FACTS

The Court now finds the following additional facts:

49.   Plaintiff Partners for Health and Home, L.P. is a California limited partnership.

50.   Plaintiff's Perma-Life cookware is manufactured in the United States.

51.   Plaintiff sells non-electric cookware and electric cookware under the Perma-Life trademark. Plaintiff sells those products in the United States and also exports those products to Korea.

52.   Plaintiff's principal Ki Won "Jean" Shim owns Korean Trademark Registration No. 0497601, issued July 13, 2001, for the mark Perma-Life for the goods of "pans; jugs; frying pans, non-electric; teacups of precious metals; chopsticks." That trademark registration is subsisting and valid.

53.   In addition to its U.S. website at www.partnersus.com, Plaintiff maintains a Korean national and Korean language website at www.partnerskorea.co.kr through which it promotes its Perma-Life cookware.

54.   On July 27, 2009, Mr. Yang filed Korean trademark application No. 40-2009-0035888 for the mark "Perma Life" for the goods of "**Electric kettles** [for household purposes]; Electric coffee makers for household purposes; **Electric cooking pots** [for household purposes]; **Electric cooking stoves** [for household purposes]; Electric furnaces [for household purposes]; Refrigerators; Electric fans; Electric refrigerators; Electric ranges; **Kettles, electric**; **Autoclaves [electric pressure cookers]**; **Pressure cooking saucepans**, **electric**; **Electric cookers**;

Microwave ovens; Dental ovens; Ice box; Sinks; Pocket warmers; Aquarium heaters; Bidets; Heaters for heating irons; Bath tubs; Tanning apparatus [sun beds]; Hearths; Hot-air space heating apparatus [for industrial purposes]; Hot-water space heating apparatus [for industrial purposes]; Air conditioners; Ventilators; Lamps; Washers for water taps; Water taps; Toilets, portable; Heating apparatus and devices for laboratory use; Heating and cooling systems for ships; Heating and cooling systems for aircrafts; Heating and cooling systems for railway vehicles; Heating and cooling systems for motor cars; Bicycle lights; Drying apparatus for agricultural use; Air filtering installations; Beverages cooling apparatus; Tobacco roasters; Water control devices; Electric lamps; burners." (emphases added to highlight cookware items).

55.   While that Korean trademark application was pending, Mr. Yang made the following representations to this Court in a sworn declaration [29-1]:

> 16. I do not use the name "Perma Life" or "Pearl Life" to market or sell any product. I do not use the name "Perma Life" or "Pearl Life" in any advertising for cookware or any other product.
>
> *          *          *
>
> 20. S T P America does not presently use the name "Perma Life" or "Pearl Life" to market or sell any product or for any other purpose."

56.   There is both similarity and overlap between the goods that are listed in Mr. Yang's Korean trademark application for "Perma Life" on the one hand, and goods that are listed in Ms. Shim's Korean trademark registration for "Perma-Life" and goods that Plaintiff sells in the U.S. and in Korea under its Perma-Life trademark on the other hand.

57.   Even after a first preliminary injunction [85], [86] was entered against him ordering him not to use the name "Perma-Life" in certain ways to promote his products, Mr. Yang has refused Plaintiff's demands to abandon his Korean trademark application for the mark Perma Life and to agree not to use that term for any products including cookware.

58.   Any Conclusion of Law hereafter determined to be an undisputed fact is hereby made an undisputed fact

## II. CONCLUSIONS OF LAW

A federal district court has subject matter jurisdiction to issue an injunction that extends to overseas activities, at least where, as in this case, the defendant resides in the U.S. and directs the infringing activities from the U.S., and those infringing activities would harm a U.S. citizen. See Steele v. Bulova Watch Co., 344 U.S. 280, 285-87, 73 S. Ct. 252, 97 L. Ed. 319 (1952); Ocean Garden Inc. v. Marktrade Co. Inc., 953 F.2d 500, 21 U.S.P.Q.2d 1493, 1497 (9th Cir. 1991); Reebok Int'l Ltd. v. Marnatech Enters., 970 F.2d 552, 23 U.S.P.Q.2d 1377, 1387 (9th Cir. 1992).

If Mr. Yang advertises or sells products under his proposed "Perma Life" brand name in either the U.S. or in Korea, it will harm Plaintiff in its business and will affect U.S. commerce. Accordingly, this Court has extraterritorial jurisdiction over Yang and his overseas activities.

A broad injunction ~~ordering Mr. Yang to abandon his Korean trademark application and~~ prohibiting Mr. Yang from using the mark "Perma Life" for any products anywhere in the world is appropriate to prevent further harm to Plaintiff, it business, and to United States commerce, particularly in view of Mr. Yang's past uses of Plaintiff's Perma-Life trademark in various ways in order to trade upon the goodwill in that mark and to divert customers to his own competing products.

Dated: December 14, 2011

*/s/ Ralph Zarefsky*

Magistrate Judge,
United States District Court

Presented by:

    /Joel D. Voelzke/
Joel D. Voelzke
Intellectual Property Law Offices of Joel Voelzke, A P.C.
24772 W. Saddle Peak Road
Malibu, CA  90265
Tel: (310) 317-4466
Fax: (310) 317-4499

Attorneys for Plaintiff Partners for Health and Home, L.P.