O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PARTNERS FOR HEALTH AND HOME, L.P., ETC., | ) ) ) | CASE NO.   CV 09-07849 RZ consolidated with CV 10–04073 RZ |
| Plaintiff, | ) ) | |
| vs. | ) ) | UNDISPUTED FACTS AND CONCLUSIONS OF LAW |
| SEUNG WEE YANG, ETC., ET AL., | ) ) | |
| Defendants. | ) ) ) | |

      This matter came before the Court on March 12, 2012 on the motion of Plaintiff for summary judgment. Plaintiff appeared through its attorney Joel D. Voelzke. Defendant Seung Wee Yang appeared pro se, assisted by a Korean language interpreter he had brought with him. The Court heard argument and took the matter under submission.

      The motion was duly noticed and, out of an abundance of caution, and consistent with *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998), the Court formally gave Defendant Yang notice of his obligations in responding to a summary judgment motion. Nevertheless – and despite the fact that this is the third motion for summary judgment in this case – Defendant Yang did not submit any declarations on matters of substance in response to the motion. He did state that he did not have enough time, but he did not submit a declaration in accordance with FED. R. CIV. P. 56(d), and the notion that he did not have enough time is unconvincing. The Court on its own continued the hearing

on the motion from its originally-noticed date of February 27, 2012. The motion itself originally was filed on January 20, 2012, and it is clear that Defendant Yang had plenty of time to respond to the motion.

The Court incorporates its Statement of Uncontroverted Facts and Conclusions of Law, filed October 28, 2011 (Document No. 113), and its Statement of Uncontroverted Facts and Conclusions of Law, filed December 14, 2011 (Document No. 119). In those documents, the Court determined that there was no genuine issue of fact as to liability under various claims, and that Plaintiff was entitled to judgment as a matter of law. The present motion addresses issues relating to relief.

## UNDISPUTED FACTS

1.      Yang filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code on August 1, 2009.

2.      Plaintiff's counsel sent a copy of the instant complaint to Yang's trademark attorney, Clinton Cusick, on November 6, 2009.

3.      Mr. Cusick sent a return letter acknowledging the lawsuit on November 13, 2009 but refusing to accept service.

4.      Plaintiff's counsel then mailed a copy of the complaint directly to Mr. Yang on November 19, 2009.

5.      Despite Yang's being advised of this lawsuit both through his attorney and directly, Yang never listed this lawsuit within his bankruptcy schedules.

6.      Yang never gave to Plaintiff the formal notice of bankruptcy proceedings that a debtor is required to send to his creditors, nor otherwise notified Plaintiff that he was in bankruptcy.

7.      Yang received a discharge of over $300,000 in debts on December 1, 2009. His bankruptcy case was closed on December 21, 2009.

8.      Plaintiff became aware of Yang's bankruptcy for the first time on March 24, 2010 when Yang's then-attorneys in this case sent notice of the bankruptcy case,

and a copy of his bankruptcy petition, to Plaintiff's counsel.  By that time, Yang had already answered the Complaint here a month previously.  The Answer did not mention Yang's bankruptcy petition or discharge.

9.    In attempting later to avoid his bankruptcy case from being reopened, Yang presented a sworn declaration to the Bankruptcy Court stating that he could not possibly have listed this lawsuit in his bankruptcy schedules because he did not learn of the lawsuit until after his bankruptcy case was already closed.  This was false.

10.    Yang continued to use the domain www.perma-life.co.kr to advertise and sell his Pearl Life cookware post-petition.

11.    Yang continued to advertise and sell his infringing Pearl Life cookware at least until June 2011, which was after he had received a discharge and his bankruptcy case was closed.

12.    Yang told the Bankruptcy Court that for the 60 days prior to his bankruptcy petition, he had had no job, had not been self-employed, had no assets, and had no inventory of product.  This was false.

13.    Yang claims to have lost all of his business records from his Pearl Life cookware business in late November 2009, which was approximately one month after this lawsuit was filed on October 28, 2009.  He has presented no evidence of any sort – not only no records, but also no expert testimony, or even no testimony estimating any costs or expenses – sufficient to establish a triable issue of fact as to his costs and expenses.

14.    On May 18, 2009, Plaintiff filed an Opposition in the U.S. Patent and Trademark Office opposing Yang's "Pearl Life" trademark application serial no. 77/401,110 on the ground that "Pearl Life" would be confusingly similar to "Perma-Life."

15.    Yang filed his Answer to that Opposition on June 19, 2009.

16.    Approximately one month later, on July 27, 2009, Yang filed Korean trademark application serial no. 40-2009-0035888 to register "Perma Life" as his own trademark for a wide variety of products including electric cookware.

17.     Plaintiff prevailed in the Opposition proceeding in the Patent and Trademark Office when, on November 25, 2009, the Trademark Trial and Appeal Board declared Yang's application to be deemed withdrawn.

18.     Yang registered the domain www.kissmixer.com on March 8, 2001, and remains the owner of that domain today.  Yang has been using that domain since at least 2005 to operate an online business ("the Kissmixer.com Business") selling a kitchen mixer called a "Kiss Mixer" and a variety of other housewares.

19.     Contrary to his representations to the Bankruptcy Court, Yang was in the business of selling Pearl Life cookware during his bankruptcy, having received approximately $19,636 worth of Pearl Life cookware inventory in late June or early July of 2009, and selling that cookware during the months of July, August, September, and October of 2009.

20.     Yang continued to advertise and sell Pearl Life cookware on the Internet until at least October 15, 2010.

21.     In sum, immediately before filing bankruptcy, Yang made a purchase of approximately $20,000 (retail price) of inventory, failed to pay his manufacturer and got the invoice for that purchase discharged in bankruptcy, then kept and sold that inventory before, during, and after his bankruptcy case, while not disclosing to the Bankruptcy Court the existence of that inventory and the money he obtained by selling it.

22.     Yang operated an online business at Kissmixer.com selling a kitchen mixer and various housewares for several years before his 2009 bankruptcy, during his bankruptcy, and after his bankruptcy case was closed.  Before his bankruptcy, he operated that business using the name of defendant STP.  After his bankruptcy, he operated that business under the name of defendant Dong Yang.

23.     The Court takes judicial notice of the records of the California Secretary of State.  Those records show that defendant STP is a dissolved corporation, and that defendant Dong Yang Science, Inc. is a suspended corporation.

24.     In sum, Yang continuously operated the Kissmixer.com Business before, during, and after his bankruptcy, but never told the Bankruptcy Court about either that domain, that ongoing business, or the product inventory or income that would naturally have been associated with that business.

25.     Any conclusion of law that is later determined to be an uncontroverted fact is hereby stated as an uncontroverted fact.

## CONCLUSIONS OF LAW

1.     Any uncontroverted fact that is later determined to be a conclusion of law is hereby made a conclusion of law.

2.     This Court has jurisdiction over the subject matter of the action.

### A.     Damages, Counts I and IV (Trademark)

3.     Infringers of registered trademarks are liable in the amount of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). In exceptional cases, the court may award up to treble profits or damages, and attorney fees. 15 U.S.C. § 1117(a). Still further, "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.*

4.     "Trial courts have broad equitable discretion in determining proper compensation to holders of valid trademarks." *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661, 44 U.S.P.Q.2d 1938 (S.D. Cal. 1997).

5.     "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). The burden therefore rests on Defendant Yang to prove any expenses that would reduce his net profits downward from his previously-determined gross profits of

$400,000 - $223,708 = $176,292. (*See* Statement of Undisputed Facts and Conclusions of Law filed October 28, 2011 (#113)).

6.    Because Yang did not sustain his burden of introducing any evidence as to his costs or deductions, there is no genuine issue as to Yang's net profits, and no dispute as to the amount asserted by Plaintiff, i.e., $176,292.

7.    Under the Trademark Act, the court can award up to treble damages or profits "according to the circumstances of the case."  15 U.S.C. § 1117(a).  In exceptional cases, the court can also award attorney fees.  *Id.*

8.    Whether a case is "exceptional" is an issue for the court to decide. *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 657, 74 U.S.P.Q.2d 1128 (9th Cir. 2005).   The decision to award fees under § 1117(a) lies within the district court's sound discretion. *TE-TA-MA Truth Foundation-Family of URI, Inc. v. The World Church of the Creator*, 392 F.3d 248, 257, 73 U.S.P.Q.2d 1103 (7th Cir. 2004).  "Usually, the type of conduct that has sufficed to make an 'exceptional case' is intentional, deliberate, or willful infringement. More than mere negligence is required."   5 McCarthy on Trademark and Unfair Competition § 30:100 (Thomson West 2007).  In practice, the courts award attorney fees to prevailing defendants "with some regularity."  *Id.*

9.    The Ninth Circuit has stated that "[a] trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully."  *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216, 69 U.S.P.Q.2d 1119 (9th Cir. 2003).  Where a defendant made deliberate and calculated attempts to confuse his products with the plaintiff's, the case is exceptional and the Court should award fees.  *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1042, 67 U.S.P.Q.2d 1532 (9th Cir. 2003).

10.    With respect to the trademark counterfeiting count, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorneys fee,"

1    if the court finds that the defendant intentionally used a counterfeit mark.  15 U.S.C.
2    § 1117(b).

3            11.    Yang's infringements of Plaintiff's Perma-Life trademark were willful.

4            12.    This case is exceptional due to Yang's various willful infringements of
5    Plaintiff's rights.   There is no genuine issue of material fact as to any extenuating
6    circumstances; no evidence of any such circumstances has been proffered.

7            13.    On Counts I and IV, the Court finds that it is appropriate, on the
8    undisputed facts here, to award treble profits for a total award of $528,876.

9            14.    Plaintiff is entitled to recover reasonable attorney fees.
10

11   **B.    Statutory Damages - Trademark Counterfeiting (Count II)**

12           15.    The statutory damages for Trademark Counterfeiting (Count II) under
13   15 U.S.C. § 1114(1) are:

14                  (1)    a minimum of $1,000, and a maximum of $200,000, as the court
15   considers just, or

16                  (2)    up to $2,000,000 if the violation was willful, as the court
17   considers just.  15 U.S.C. § 1117(c).

18           16.    Yang's counterfeiting was willful.  There is no genuine issue of fact as
19   to Yang's willfulness.

20           17.    Under the undisputed facts, the Court awards $10,000 on the
21   counterfeiting count.
22

23   **C.    Statutory Damages - Cyberpiracy (Count III)**

24           18.    A plaintiff who prevails on a cyberpiracy count may elect statutory
25   damages.  15 U.S.C. § 1117(d).  The amount of statutory damages shall be set by the court
26   at between $1,000 and $100,000 per domain name, as the court considers just.  *Id*.  A
27   prevailing plaintiff who elects statutory damages may also be awarded attorney fees.  *See*
28

*e.g.*, *Aztar Corp. v. MGM Casino*, 59 U.S.P.Q.2d 1460, 1465-66, 2001 WL 939070 (E.D. Va. 2001) (awarding both $100,000 statutory damages and attorney fees).

19.    An award of statutory damages for cyberpiracy is not duplicative of an award for trademark infringement; the two statutes have different elements and serve two different purposes (compensation vs. sanction), so the remedies are not duplicative and can both be awarded.  *St. Luke's Cataract and Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1204, 91 U.S.P.Q.2d 1302 (11th Cir. 2009) (affirming a jury award of both statutory damages under the ACPA plus monetary damages under the Lanham Act).

20.    Yang is liable for two counts of cyberpiracy:  the first with respect to the domain www.permalife.co.kr, and the second with respect to the domain www.perma-life.co.kr.

21.    With respect to the domain www.permalife.co.kr, the Court determines it is appropriate to award statutory damages of the minimum of $1,000, inasmuch as Yang has done nothing other than register the domain name.

22.    With respect to the domain www.perma-life.co.kr, the Court determines to award statutory damages of $25,000 given the undisputed facts, previously found, of Yang's abuse of Plaintiff's trademark through use of this domain name.

23.    Plaintiff is entitled to recover its reasonable attorney fees.

**D.    Total Monetary Award**

24.    The total damages award therefore are:

| | |
|---|---|
| Trademark Infringement, Lanham Act | $528,876 |
| Trademark Counterfeiting | $ 10,000 |
| Cyberpiracy | $ 26,000 |
| **Total Damages Award** | **$564,876** |

///
///
///

**E.      Injunction**

25.      The court may grant injunctions to prevent further infringements.  15 U.S.C. § 1116.  In a trademark infringement case, a prevailing plaintiff is entitled to a presumption of irreparable harm, and therefore is presumptively entitled to a permanent injunction to prevent further infringements. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).

26.      For cyberpiracy, the court can order the defendant to transfer the disputed domain(s) to the trademark owner.  15 U.S.C. § 1125(d)(1)(C).

27.      Plaintiff is entitled to a permanent injunction prohibiting the defendants from any further infringements of Plaintiff's trademark.

28.      Plaintiff is further entitled to an order that Yang transfer the domains www.permalife.co.kr and www.perma-life.co.kr to Plaintiff.

29.      Plaintiff is further entitled to an order that enjoins Yang from proceeding with his Korean trademark application no. 40-2009-035888 for the mark "Perma Life."

**F.      The Judgment Is Non-Dischargeable Under the Bankruptcy Code (Count V)**

30.      When a debtor fails to schedule a liability within his bankruptcy schedules, the creditor can seek later to have the liability declared non-dischargeable. *In re Beezley,* 994 F.2d 1433, 1437, 1441 (9th Cir. 1993) (O'Scannlain, Circuit J., concurring).

31.      "[I]f the debt flows from an intentional tort . . . , the debtor's failure to schedule in time to provide notice to the creditor of the need to seek an adjudication of dischargeability is *conclusive* (at least in the absence of actual knowledge of the bankruptcy on the part of the creditor).  The debt is not discharged." *Id*. at 1437 (emphasis in original).

32.      The principle of non-dischargeability for failure to schedule a liability is "absolutely fundamental to the integrity of the Bankruptcy Code." *Id*. at 1439.

33.    The standard of proof required to demonstrate that a debt was non-dischargeable is the ordinary preponderance-of-the-evidence standard. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

34.    An action for non-dischargeability can be brought in state court, federal district court, or in bankruptcy court, at virtually any time of the creditor's choosing. *See In re Bartomeli*, 303 B.R. 254, 269 (D. Conn. 2004) ("Overstating the matter only slightly, a Section 523(a)(3)(B) complaint as to nondischargeability of a debt can be brought any time, any place.").

35.    This Court therefore has jurisdiction to adjudicate Plaintiff's Count V for non-dischargeabilty.

36.    A bankruptcy discharge does not discharge an individual debtor for any debt for willful and malicious injury by the debtor to another entity or to the property of another.  11 U.S.C. § 523(a)(6).

37.    A "malicious injury" involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *In re Barboza*, 545 F.3d 702, 706, 88 U.S.P.Q.2d 1351 (9th Cir. 2008).

38.    Under § 523(a)(6) of the Bankruptcy Code, "willful means deliberate or intentional . . . [and] [m]alicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *In the Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

39.    Malicious intent may be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights.  Thus, the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor are highly relevant. *In re Pasek*, 983 F.2d 1524, 1527 (10th Cir. 1993).

40.    In performing the acts described above, Yang was fully aware of Plaintiff's rights in the name "Perma-Life."

41.    Yang's infringements of Plaintiff's rights were without just cause or excuse.

42.    Yang's infringements of Plaintiff's trademark were "willful and malicious" within the meaning of 11 U.S.C.S. § 523(a)(6).

43.    Furthermore, because the "bad faith" element of cyberpiracy is equivalent to the "willful and malicious" standard for non-dischargeability, liability for cyberpiracy under 17 U.S.C. § 1125(d) necessarily qualifies as a "willful and malicious" injury within the meaning of the bankruptcy code, and is thus necessarily non-dischargeable in bankruptcy. *In re Wright*, 355 B.R. 192, 209-11, 81 U.S.P.Q.2d 1796 (Bankr. Ct. C.D. Cal. 2006).  A judgment herein for cyberpiracy is therefore necessarily non-dischargeable by Yang in bankruptcy.

44.    Because Yang's infringements were willful and malicious, and because Yang did not notify Plaintiff of his bankruptcy petition and Plaintiff did not know about Yang's bankruptcy until after his bankruptcy case was closed, Yang's liabilities as found herein are non-dischargeable, and could not have been, and were not, discharged by his 2009 bankruptcy.

45.    A bankruptcy discharge cannot discharge liabilities for acts that the debtor committed or continued post-petition, or at least post-discharge.  *See Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178 (Fed. Cir. 2006); *see also O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) ("A suit for illegal conduct occurring after discharge threatens neither the letter nor the spirit of the bankruptcy law.  A 'fresh start' means only that; it does not mean a continuing licence [sic] to violate the law.").

46.    Yang continued to infringe post-discharge.

47.    Yang's 2009 bankruptcy discharge could not have excused Yang for any infringing activities that he continued post-discharge, including his continuing to leave online any infringing material that he originally posted pre-petition.

48.    Because the Court finds that all of Yang's liabilities were non-dischargeable, the Court need not need attempt, and will not attempt, to apportion what

percentage of the award granted herein is for acts that occurred or continued post-petition and/or post-discharge.

49.   A court can deny a discharge to a debtor if the debtor conceals assets or presents a false accounting of his business and/or assets.  11 U.S.C. § 727(a)(2), (4).

50.   "A discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor.  *Matter of Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996).  Bankruptcy law will not tolerate a dishonest debtor.  *See Kentile Floors, Inc. v. Winham*, 440 F.2d 1128, 1131 (9th Cir. 1971).

51.   Customer lists and domain names are assets which a debtor must list on his asset schedules.  *In re Luby (Panda Herbal Int'l Inc. v. Luby)*, 438 B.R. 817, 826, 829-30 (Bankr. E.D. Pa. 2010).  Where a debtor has used a domain name to sell products, the court can conclude that the debtor knows that the domain name is a valuable asset, and the court can accordingly infer that by failing to list the domain name on his asset schedules, the debtor intended to conceal assets from the bankruptcy trustee.  *Id*. at 830.  A debtor's failure to list his assets on his bankruptcy schedules can constitute a false oath for purposes of § 727(a)(4).  *Id.*

52.   When a debtor operates a business as if he had never filed for bankruptcy, merely changing the brand name and the corporation under which he operates, the court should deny a discharge.  *Id.*

53.   In this case, Yang hid significant assets and ongoing businesses from the Bankruptcy Court.  The assets and businesses that he hid from the Court included:

(a)   approximately $19,636 worth of Pearl Life cookware that he received from the manufacturer approximately 38 days before filing for bankruptcy, and the income that he received from selling that Pearl Life cookware both before, during, and after his bankruptcy;

(b)   the domain www.pearllife.com;

(c)   U.S. trademark application no. 77,401,110 for the mark "Pearl Life";

(d)   the domain www.316plc.com that he registered on November 10, 2009, approximately 2 months after he had petitioned for bankruptcy;

(e)   the domain www.kissmixer.com from which Yang sold a kitchen mixer called the Kiss Mixer and a variety of other household products;

(f)   Yang's ongoing Kissmixer.com Business at that domain, which Yang had started at least by 2005, and which he continued to operate before, during, and after his bankruptcy, merely changing the name at the bottom of the main page from defendant "STP America, Inc." to defendant "Dong Yang Science, Inc." but at all times listing his own email address of comyang01@yahoo.com as the contact address for that business; and

(g)   Korean trademark application no. 40-2009-0035888 for the mark "Perma-Life" for a wide variety of products including electric cookware that Yang filed in Korea on July 27, 2009, which was 4 days before he filed for bankruptcy.

54.   The above undisputed facts lead to a firm conviction that Yang is a dishonest debtor for whom discharge should be denied, and for whom discharge should have been denied.

55.   Where an underlying liability is held to be non-dischargeable, any enhanced damages including treble damages, and any attorney fee award and costs are also non-dischargeable. *Cohen v. de la Cruz*, 523 U.S. 213, 218-19, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998); *AU Pharmaceuticals, Inc. v. Whitner (In re Whitner)*, 179 B.R. 699, 703 (Bankr. E.D. Okla. 1995) (where the trademark infringement count was willful and malicious and hence nondischargeable, the court costs were also non-dischargeable); *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 738-39 (9th Cir. BAP 2009) (where the defendant's actions were willful and malicious under 11 U.S.C. § 523(a)(6), attorneys' fees and costs were nondischargeable even though there was no award of compensatory damages).

56.     Accordingly, attorney fees and costs awarded herein are also non-dischargeable, and were not discharged by Yang's 2009 bankruptcy.

DATED:   March 30, 2012

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE