O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARTNERS FOR HEALTH AND HOME, L.P., <br><br> Plaintiff, <br><br> vs. <br><br> SEUNG WEE YANG, ETC., ET AL., <br><br> Defendants. | CASE NO.  CV 09-07849 RZ <br> consolidated with <br> CASE NO.  CV 10-04073 RZ <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PLAINTIFF'S APPLICATION FOR ATTORNEY'S FEES AND COSTS |

## BACKGROUND

1.  The facts relating to this case, including the substantive liability of defendant Yang, are set forth in detail in the Undisputed Facts and Conclusions of Law [113] entered October 28, 2011 and in the Undisputed Facts and Conclusions of Law [138] entered March 30, 2012.

2.  The Court previously entered default against the corporate defendants. (Order Granting Plaintiff's Motion for Entry of Default Judgment against the corporate defendants [145].)  The Court also found that the corporate defendants were, for all purposes material to this lawsuit, inseparable from Defendant Yang, with Yang operating the corporate defendants using the same contact information and promoting the sale of the infringing products.  (*Id.* at 1.)

3. In its Conclusions of Law [113] addressing the issues of liability, the Court granted summary judgment against Yang on all substantive counts I-IV asserted in the First Amended Complaint. ([113], Conclusion of Law Nos. 12, 13, 30, 34, 35 and 37.)

4. In its Conclusions of Law [138] addressing the issues of damages, willfulness, and attorney fees, the Court ruled as follows:

    a. With respect to Count I (Trademark Infringement under 15 U.S.C. § 1114(1)) and Count IV (False Designation of Origin and False Advertising under 15 U.S.C. § 1125(a)), the Court found that Defendant Seung Wee Yang had willfully infringed Plaintiff's Perma-Life trademark and that the case was therefore exceptional, and awarded Plaintiff its reasonable attorney fees. (*Id.* at Conclusions of Law Nos. 11-14.)

    b. With respect to Count II (Trademark Counterfeiting under 15 U.S.C. § 1114(1)), the Court found that Yang's counterfeiting was willful, and awarded $10,000 on that count. (*Id.* at Conclusions of Law Nos. 16-17.)

    c. With respect to Count III (Cyberpiracy under 15 U.S.C. § 1125(d)), the Court found that Yang had committed cyberpiracy with respect to two domains, and awarded statutory damages of $1,000 with respect to the domain www.permalife.co.kr and $25,000 with respect to the domain www.perma-life.co.kr, and awarded to Plaintiff its reasonable attorney fees. (*Id.* at Conclusions of Law Nos. 20-23.)

    d. The Court granted a permanent injunction against future infringement, and ordered Yang to transfer the two domains in suit to Plaintiff. (*Id.* at Conclusions of Law Nos. 27-29.)

    e. With respect to Count V (non-dischargeability in bankruptcy), the Court found that the judgment was non-dischargeable in bankruptcy and was in fact not discharged by Yang's 2009 bankruptcy, both because the infringements were willful and malicious within the meaning of 11 U.S.C. § 523(a)(6) (*id.* at Conclusions of Law Nos. 42-44), and also because Yang

had concealed income and assets during his 2009 bankruptcy (*id.* at Conclusions of Law Nos. 53-55).

   f. The attorney fees and costs awarded in this case are also non-dischargeable in bankruptcy, because they are awarded as part of a judgment that is itself non-dischargeable. (*Id.* at Conclusions of Law No. 56.)

  5. Previously, the Clerk approved a Bill of Costs [149] in the amount of $5,144.60.

  The Court now finds and rules as follows with respect to the instant fee application.

## FINDINGS OF FACT

Plaintiff's Counsel

  1. Plaintiff was represented by Joel Voelzke of the Intellectual Property Law Offices of Joel Voelzke, APC, of Malibu, California. Mr. Voelzke is a former partner at Oppenheimer Wolff & Donnelly, LLP, which was an international law firm at the time that Mr. Voelzke was a partner there. Mr. Voelzke personally handled all aspects of this case. (Voelzke Decl. [148-2] ¶¶ 1-4.)

  2. Mr. Voelzke was admitted to practice in California and before this Court in 1995. Additionally, he is registered to practice before the U.S. Patent and Trademark Office ("PTO"). He has 16 years of experience as an intellectual property attorney. For the last eight years he has practiced at the Intellectual Property Law Offices of Joel Voelzke, APC. (*Id.*)

Plaintiff's Attempts to Settle Without Litigation, and Early in this Litigation

  3. Before this lawsuit was filed, Plaintiff offered to settle this dispute if Yang would change the name of his cookware brand from "Pearl Life" to a name that would be entirely dissimilar to Plaintiff's Perma-Life trademark. (*Id.* at ¶ 15, Exh. 1.) Yang refused. (*Id.*)

4.      After Yang refused to change brand names, Plaintiff conducted further investigation and found additional infringements by Yang. Plaintiff then filed this lawsuit.

5.      Early in this lawsuit, Plaintiff orally offered to Yang's counsel to settle this lawsuit for $50,000 and Yang's commitment to no longer infringe. (Voelzke Decl. [148-2] ¶ 17.) Yang's counsel declined that offer. (*Id.*)

Complicated Factors in This Case

6.      This case was complicated by several developments:

    a.      Yang claimed that in November 2009, he lost all of his business records from his Pearl Life cookware business that was the subject of this lawsuit. (Findings of Fact and Conclusions of Law [138], Undisputed Fact No. 13.)

    b.      After Yang filed an answer through his attorney, and this case had been underway for several months, Yang's attorney informed Plaintiff for the first time on March 24, 2010 that Yang had filed Chapter 7 bankruptcy on August 1, 2009, that he had received a discharge of debt on December 3, 2009, and that his bankruptcy case had been closed on December 21, 2009. (Voelzke Decl. [33-1] submitted in connection with Plaintiff's Motion for Leave to File First Amended Complaint [33], Exh. 4.) Thus, unbeknown to Plaintiff, Yang's bankruptcy case was pending at the time that Plaintiff filed the instant complaint, and unbeknown to Plaintiff, that case had also terminated while this litigation was pending. (*Id.*; Shim Decl. [127] ¶¶ 1-2.)

    c.      During this case, both of Yang's attorneys who appeared on his behalf, Gabriel Colorado of the Law Offices of Steven C. Kim & Associates and Jaenam Coe of the Park Law Firm, stated that if Plaintiff did anything to proceed with this case, they would seek sanctions against Plaintiff and attorney Voelzke for violating the automatic stay on litigation created by a bankruptcy filing. (Voelzke Decl. [148-2] Exhs. 2-7.)

   d. Plaintiff then filed a Motion for Leave to File First Amended Complaint [33], to include new Count V for non-dischargeability in bankruptcy. Yang's attorneys neither opposed that motion nor filed a notice of non-opposition. The Court granted that motion [69].

   e. Plaintiff successfully moved for two preliminary injunctions in this case including one extraterritorial injunction. (See [45], [46], [113], [114], [119].)

   f. Plaintiff successfully moved to compel interrogatory answers from Mr. Yang and to compel Mr. Yang's deposition. (See [42].) The Court did not award sanctions at that time. (*Id.*)

   g. In his discovery answers, Yang claimed to be unable to remember any way in which he had ever used Plaintiff's Perma-Life trademark within his advertising to sell his competing Pearl Life cookware. (Undisputed Facts and Conclusions of Law [113], Undisputed Fact No. 23.)

   h. Yang and his corporations had, however, used Plaintiff's Perma-Life trademark in his own advertising in a number of different ways. (*Id.*, Undisputed Facts Nos. 25-40.)

These situations often unnecessarily complicated the litigation of this case, and required the expenditure of attorney time that might not have been necessary otherwise.

Attorney Time Devoted, and Billing Rate

   7. Until March 2010, Attorney Voelzke billed Plaintiff on an hourly basis, at a rate of $315/hour. (Voelzke Decl. [148-2] ¶¶ 5-6.) That rate is Voelzke's most-favored rate for long time clients with good payment histories. (*Id.* at ¶ 7.)

   This rate falls well within the market rate for attorneys practicing in Los Angeles in this kind of litigation. Plaintiff submitted relevant portions of the American Intellectual Property Law Association (AIPLA) Report of the Economic Survey 2011 (the

"AIPLA Report"). According to that survey, solo practitioner intellectual property attorneys in Los Angeles charged a mean hourly rate in 2011 of $338. (Appendix of Evidence [143-3], Exh. 1.) Defendant submitted no contrary evidence.

8. During that time, Voelzke devoted and billed Plaintiff for 92.8 hours, or $29,232 in attorney fees, plus expenses incurred. (Appendix of Evidence [148-3], Exhs. 2-8, 28.)

9. Plaintiff paid all of those hourly invoices. (Voelzke Decl. [148-2] ¶ 18.)

10. After March 31, 2012, Plaintiff and Voelzke switched to a contingency billing arrangement, in which Plaintiff would pay Voelzke's expenses incurred but not any hourly attorney fees. (Voelzke Decl. [148-2] ¶ 5.)

11. After switching to the contingency arrangement, Voelzke devoted 722 hours to this case. (Appendix of Evidence [148-3], Exh. 29.)

12. Voelzke continued to bill Plaintiff for expenses incurred. (Voelzke Decl. [148-2] ¶ 18; see also Appendix of Evidence, Exhs. 9-22.)

13. Plaintiff paid all of those invoices. (Voelzke Decl. [148-2] ¶ 18.)

14. Voelzke therefore devoted a total of 92.8 + 722 = 814.8 hours to this case. At Voelzke's billing rate of $315/hour, that equates to $256,662. Under the circumstances of this case, the hours devoted were reasonable. Also according to the AIPLA Report, the mean amount charged by other attorneys in the Los Angeles area for trademark infringement litigation through the end of discovery, in cases in which the amount of money at stake is less than $1 million, is $207,000. (*Id.*)

Expenses Incurred

15. Voelzke incurred, and billed to Plaintiff, the following expenses that were not included within the costs taxed by the Clerk:

      a.    Travel Costs ..................................... $507.20
      b.    Postage ............................................ 46.77
      c.    FedEx (copies to chambers)................. 877.50

|   |   |   |   |
|---|---|---|---|
| | d. | Investigators ........................................ | 879.55 |
| | e. | Process servers .................................... | 460.00 |
| | | **Total ................ $2,771.02** | |

(See Voelzke Decl. [148-2] ¶ 19, and Appendix of Evidence [148-3], Exhs. 23-27.) Those costs were actually billed to Plaintiff. (See Appendix of Evidence, Exhs. 2-27.) Plaintiff paid all of those expenses. (Voelzke Decl. [148-2] ¶ 18.)

Any conclusion of law which later is determined to be a finding of fact is hereby found as a fact.

## CONCLUSIONS OF LAW

Any finding of fact which later is determined to be a conclusion of law is hereby made a conclusion of law.

1. When attorney fees are awarded, the amount of the fee award is subject to the court's discretion. *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 76 F.2d 1291, 1312-13 (9th Cir. 1982). The Ninth Circuit set forth the steps a district court should follow in determining the amount of a fee award under the Lanham Act in *Intel Corp. v. Terabyte Int'l., Inc.*, 6 F.3d 614 (9th Cir. 1993):

> When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Next, in appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation.

*Intel Corp.*, 6 F.3d at 622 (internal citation omitted)[1]; *Carins v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002).

2. The lodestar method is used to determine a presumptively reasonable attorney fee award in trademark infringement cases under 15 U.S.C. § 1117(a). *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210 (9th Cir. 2003). Because the lodestar figure is presumptively reasonable, adjustments should be made only in rare cases. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d. 439 (1986), *rev'd on rehearing other grounds*, 487 U.S. 711 (1987).

3. In trademark contingency fee cases, in awarding fees the court can refer to civil rights contingency cases for which there is more case law. *See Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1184 (N.D. Cal. 2004).

4. Application of the lodestar method in a trademark infringement case may properly result in an attorneys' fee award that is even larger than the award of the infringer's profits because "when a trademark in infringed, trademark owners have more at stake than just the damages or loss of profits in that case. Their failure to enforce their rights may result in the weakening of these rights over time." *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.,* 282 F.3d 23, 61 U.S.P.Q.2d 1865, 1872 (1st Cir. 2002).

5. The existence of a contingency fee arrangement favors awarding to counsel the requested value of their services, because counsel accepted the case with the possibility that he might not receive compensation. *Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F. Supp. 1021, 33 U.S.P.Q.2d 1934, 1938 (E.D. Va.

---

[1] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

1994). In *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), the Ninth Circuit explained:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Id.* at 1112. *Accord*, *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1080 (N.D. Cal. 2010) ("[I]f anything, an attorney working on contingency is less likely to expend unnecessary hours because the payoff is too uncertain.") (citing *Moreno*).

   6.   The reasonable hourly rate corresponds to the prevailing market rate in the relevant community, considering the experience, skill, and reputation of the attorney in question. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985).

   7.   To demonstrate that the amount of time spent on the case was reasonable, the party must present more than simply records demonstrating the time actually spent on the case. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984). Counsel must demonstrate that the time actually spent was reasonably necessary to the effective prosecution or defense of the claims. *Id.* at 1385 n.4.

   8.   The time and effort undertaken by Plaintiff's counsel in prosecuting the claims was reasonable and necessary in light of the needs of the litigation and the stance taken by, and the tactics of, the Defendants in this action. Those tactics included: (a) Defendants claiming in discovery to no longer have any of their business records, thus

1  forcing Plaintiff to obtain Defendants' record of its purchases of the accused products
2  through a third party witness; (b) Defendants' failing to respond to discovery and failing
3  to appear for deposition, thus requiring Plaintiff to bring a (successful) motion to compel
4  both written discovery responses and deposition; (c) Defendants' attorneys erroneously
5  advising Plaintiff and its counsel that proceeding with this case would subject Plaintiff and
6  Plaintiff's counsel to sanctions for violating an automatic stay; (d) Defendants' asserting
7  supposedly critical facts in opposition to Plaintiff's preliminary injunction motion, for
8  which Defendants had failed to produce any evidence (see [45] at 5:11) ("Defendants failed
9  to provide any evidence supporting their allegations that Plaintiff abandoned the
10 "Trademark"); (e) Defendant's claiming in his discovery responses to not be able to
11 remember any way that he ever used Plaintiff's trademark in his advertising, despite his
12 having used Plaintiff's trademark in numerous ways in his advertising; and (f) Defendants'
13 attempts to use Plaintiff's trademark in Korea, thus forcing Plaintiff to seek and obtain an
14 extraterritorial preliminary injunction [113], [114].

15          9.       Although the prevailing party is entitled only to attorney's fees for work
16 expended in prosecuting the Lanham Act claims, where plaintiffs' claims are "inextricably
17 intertwined" in that they are all based on common allegations, no apportionment is
18 required. *See Love v. Mail on Sunday*, 2007 U.S. Dist. LEXIS 97061, at *3 (C.D. Cal.
19 2007) ("These claims were therefore 'inextricably intertwined,' and the Court will not
20 apportion costs between them.").

21          10.      Here, the Court awarded attorney fees under 15 U.S.C. § 1117(a) on the
22 trademark infringement (Count I), cyberpiracy (Count III), and false designation (Count
23 IV) counts, all of which are Lanham Act counts. Attorney fees are available for those
24 counts. 15 U.S.C. § 1117(a). Additionally, the Court found Yang liable for trademark
25 counterfeiting (Count II), and awarded statutory damages of $10,000 on that count.

26          11.      In cyberpiracy cases, a prevailing plaintiff is eligible for an award of
27 both statutory damages and attorney fees. *Aztar Corp. v. MGM Casino*, 59 U.S.P.Q.2d
28 1460, 1465-66 (E.D. Va. 2001).

12. With respect to the counterfeiting count, attorney's fees normally would not be available because the court has awarded statutory damages on that count. *K&N Engineering Inc. v. Bulat*, 510 F.3d 1079 (9th Cir. 2007). In this case, however, proving trademark counterfeiting did not require proof beyond Plaintiff's trademark infringement, cyberpiracy, and false designation claims and, thus, such claims were inextricably intertwined. As a result, entitlement to fees warrants an award of all fees reasonably incurred. *See generally*, *Louis Vuitton Malletier S.A. v. LY USA Inc.*, 676 F.3d 83 (2nd Cir. 2012) (distinguishing *K&N Engineering, supra*).

13. Additionally, counsel's efforts with respect to the bankruptcy non-dischargeability count (Count V), and his efforts with respect to the bankruptcy issues, were also intertwined with Counts I, II, and IV, due at least to the fact that Defendants' attorneys represented to Plaintiff that Plaintiff was prohibited under bankruptcy law from even pursuing this trademark infringement case or seeking any relief whatsoever for Yang's infringements, and threatening to seek sanctions against Plaintiff and its counsel for doing anything to pursue this case.

14. The total amount requested of $264,627.62 is in line with what similar attorneys charge for similar cases. In this case, the parties not only completed discovery (for which the mean figure according to the AIPLA Report would have been $207,000), but Plaintiff successfully moved for summary judgment of liability and of non-dischargeability in bankruptcy, as well as for two preliminary injunctions including an extraterritorial injunction.

15. In this case, the size of the award and the results achieved supports the award of fees as requested. Counsel obtained for the Plaintiff: (a) two preliminary injunctions and a permanent injunction against further infringement in both th U.S. and anywhere else in the world; (b) an order that Yang transfer the two cybersquatted domains www.perma-life.co.kr and www.permalife.co.kr to Plaintiff; (c) a damages award of $564,876; and (d) adjudication that the award is non-dischargeable in bankruptcy and in fact was not discharged by Yang's 2009 bankruptcy.

Nontaxable Costs

16. Lanham Act § 35(a), provides that "[w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, . . . (3) the costs of the action." 15 U.S.C. § 1117(a).

17. Reasonable out-of-pocket expenses normally charged to a client may be recoverable as attorney fees even if not taxable pursuant to 28 U.S.C. § 1920, so long as those expenses are customarily charged to the client. *See* Fed. R. Civ. P. 54(d)(2) ("A claim for attorney's fees and related *nontaxable expenses* must be made by motion . . .") (emphasis added); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 43 U.S.P.Q.2d 1616, 1620 (9th Cir. 1997) (upholding award to plaintiff of attorney fees and "investigation costs"); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 21 F. Supp. 2d 1255, 1262 (D. Kan. 1998) ("out-of-pocket expenses incurred during a lawsuit may be reimbursed as part of an attorney fee award if (1) the expenses are not absorbed as part of a law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable") (internal quotations omitted), *rev'd on other grounds*, 205 F.3d 1219 (10th Cir. 2000); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. 07-cv-8298, 2009 U.S. Dist. LEXIS 66097, at *3 (C.D. Cal. June 17, 2010) (citing *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577 (9th Cir. 2010) (interpreting "attorney's fees" under the Fair Credit Reporting Act)).

18. Service of the summons and complaint, photocopying and document processing costs, postage, messenger and delivery costs, travel costs, investigators, deposition-related expenses, and telephone charges are recoverable costs. *See Wyatt*, at 6-7 (citing *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577 (9th Cir. 2010)); *Harris v. Marhoefer*, 244 F.3d 16, 19-20 (9th Cir. 1994).

19. All the charges for which Plaintiff seeks to recover were normal and customary expenses incurred in litigation. This conclusion is bolstered by the fact that those expenses were actually billed to Plaintiff Partners, and Partners paid those expenses.

20.     Where the underlying liability is held to be non-dischargeable, as was held in this case (Order [146] at 2:3-4), any enhanced damages including treble damages and any fee awards are also non-dischargeable. *E.g.*, *Cohen v. de la Cruz*, 523 U.S. 213, 220-21, 118 S. Ct. 1212, 1217 (1998) (holding non-dischargeable under § 523(a)(2)(A) treble damages based on debtor's fraudulent conduct); *AU Pharmaceuticals, Inc. v. Whitmer (In re Whitmer)*, 179 B.R. 699, 703 (Bankr. E.D. Okl. 1995) ("As a result, this Court finds that the award of attorney fees against Whitmer [on the trademark infringement count] is nondischargeable as well as the award of court costs. Thus, the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6)."); *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 738-39 (9th Cir. BAP 2009) (applying *Cohen* to affirm Bankruptcy Court's determination under § 523(a)(6) that attorneys' fees and costs were nondischargeable, even though there was no award of compensatory damages).

21.     In sum, Plaintiff is entitled to receive the following amounts as attorney fees, in addition to the amount already taxed by the Clerk:

|  |  |
|---|---|
| Attorney Fees: | $256,712.00 |
| Non-Taxable Costs: | 2,771.02 |
| **Total** | **$259,483.02** |

IT IS SO ORDERED.

DATED:   September 28, 2012

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE